UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LANCE CONWAY WOOD,<br><br>             Plaintiff,<br><br>     v.<br><br>BRENT REINKE, JOHANNA SMITH, SHELL WAMBLE-FISHER, JAY CHRISTENSEN, JEFF KIRKMAN, JILL WHITTINGTON, SIDWELL, SACKETT, and TEN JOHN and TEN JANE DOES, in their individual and official capacities,<br><br>             Defendants. | Case No. 1:11-cv–00355-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are Defendants' Motion and Supplemental Motion for Partial Summary Judgment. (Dkt. 20, 31.)  Defendants assert entitlement to summary judgment based on failure to exhaust administrative remedies, and note in the Supplemental Motion that the original motion should have been filed as an unenumerated Rule 12(b) motion. (Dkt. 31.) After reviewing the parties' arguments, supporting evidence, and the record in this matter, the Court will grant in part and deny in part Defendants' Motions, construed together as a Rule 12(b) motion, for the following reasons.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND

Plaintiff is an inmate in the custody of Idaho Department of Correction (IDOC) and is currently incarcerated at Idaho State Correctional Institution (ISCI).  On June 2, 2010, Plaintiff filed his original civil rights case with several other plaintiffs in Case No. 1:10-cv-00277-REB, but the Court severed Plaintiff's case into a separate case which is now proceeding as this case, No. 1:11-cv-00355-EJL.  Plaintiff's Second Amended Complaint alleges multiple claims of constitutional violations against various IDOC employees.[1] (Dkt. 3.)

The Court initially reviewed the Second Amended Complaint pursuant to 28 U.S.C. § 1915A, and on January 4, 2012, entered an Order permitting Plaintiff to proceed with the following claims:

(1)     "Against Defendant Smith under the First and Eighth Amendments for failing to protect Plaintiff from, or acquiescing in, ongoing retaliation and calculated harassment by the other Defendants (Dkt. 8, p. 6)";

(2)      "Against Defendant Wamble-Fisher for First Amendment retaliation claims and Eighth Amendment calculated harassment claims related to Defendant Wamble-Fisher firing Plaintiff from his chapel job, not reinstating Plaintiff as a Life Transitions Program team member, and having Plaintiff's cell searched by Defendant Sackett and then having Plaintiff removed from his single cell (Dkt. 8, p. 9)";

(3)     "Against Defendant Christensen under the First and Eighth Amendments for Plaintiff losing his word processor and other materials, losing his legal books and papers, losing his paid chapel job, losing his position as head facilitator of the Life Transitions Program, and losing his single cell (Dkt. 8, p. 9)";

---

[1]Plaintiff raises <u>no new claims</u> in the Second Amended Complaint.

**MEMORANDUM DECISION AND ORDER - 2**

(4)     " Against Defendant Sidwell under the First and Eighth Amendments for placing negative reports in Plaintiff's institutional file, moving Plaintiff out of his single cell and unit, and having Defendant Sackett search Plaintiff's cell (Dkt. 8, p. 10)"; and

(5)     "Against Defendant Sackett under the First and Eighth Amendments for repeatedly searching Plaintiff's cell, stealing Plaintiff's legal evidence and material, intimidating Plaintiff's witnesses and entering false reports into Plaintiff's institutional file. (Dkt. 8, p. 10)."

On March 5, 2012, Defendants filed their Motion for Partial Summary Judgment, alleging that "Plaintiff failed to properly exhaust his administrative remedies regarding all of the above allegations except for the contention that he was unlawfully terminated from the Life Transitions Program." (Dkt. 20-1, p.3.)  Defendants contend that Plaintiff's failure to exhaust his remedies should result in all claims against Defendants Sidwell and Sackett being dismissed in their entirety and that they should be dismissed from the lawsuit with prejudice, and all claims against Defendants Smith, Wamble-Fisher and Christensen should be dismissed except for Plaintiff's claim that he was unlawfully terminated from the Life Transitions Program.  (*Id.*)

Plaintiff filed a Response to Defendants' Motion for Partial Summary Judgment (Dkt. 23) and contrarily argues that he did properly exhaust his administrative remedies against the Defendants by filing additional concerns and grievances that were not included in Defendants' Partial Motion for Summary Judgment, speaking to administrators, and addressing his concerns about Defendants' unethical behavior to Defendant Smith and Brent Reinke.  (Dkt. 23, p.8.)  On April 23, 2012, Defendants filed their Reply in Support of Motion for Partial Summary Judgment (Dkt. 27) and reiterate

**MEMORANDUM DECISION AND ORDER - 3**

their argument that Plaintiff's failure to follow through with the second and third steps of the IDOC grievance process constituted a failure to properly exhaust his administrative remedies and as a result, the majority of his claims should be summarily dismissed.  (*Id.* at 3.)

On February 7, 2013, this Court issued an Order providing the parties an opportunity to supplement the record to assist the Court in its final ruling on the Motion for Summary Judgment.  (Dkt. 30.)  The Court asked the Defendants to supplement the record with additional documentation demonstrating Plaintiff's failure to exhaust some or all of his claims <u>before</u> the June 2, 2010 filing of the original Complaint.  (*Id.* at 4.)  The Court gave Plaintiff the opportunity to provide specific dates and/or time frames of Defendants' alleged misconduct for Plaintiff's surviving claims.  (*Id.* at 6-7.)  In addition, Plaintiff was allowed to supplement his concern forms with the necessary grievance forms and appellate responses to rebut Defendants' argument in the pending Motion for Summary Judgment.  (*Id.* at 7.)

On February 21, 2013, the Defendants filed Supplement to Defendants' Motion for Partial Summary Judgment Pursuant to Order Dated February 7, 2013.  (Dkt. 31.) Defendants concede that their Motion for Partial Summary Judgment should have been submitted as an unenumerated 12(b) motion to dismiss and that, contrary to their previous briefing, Plaintiff failed to fully exhaust the prison grievance procedure regarding <u>all</u> claims.  (*Id.* at 1-3.)  Thus, Defendants argue that the Complaint should be dismissed in its entirety.  (*Id.* at 3.)  Plaintiff did not file any supplement briefing.

**MEMORANDUM DECISION AND ORDER - 4**

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

**1.      Standard of Law**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be
brought with respect to prison conditions under section 1983 of this title ... until such
administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "There is
no question that exhaustion is mandatory under the PLRA and that unexhausted claims
cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).  This requirement
is intended to give "prison officials an opportunity to resolve disputes concerning the
exercise of their responsibilities before being haled into court."  *Id*. at 204.

Proper exhaustion is required, meaning that "a prisoner must complete the
administrative review process in accordance with the applicable procedural rules,
including deadlines, as a precondition to bringing suit in federal court." *Woodford v.
Ngo*, 548 U.S. 81, 88 (2006).  Where there is an informal and relatively simple prison
grievance system, prisoners must take advantage of it before filing a civil rights
complaint.  *Id.* at 103.  "The level of detail necessary in a grievance to comply with the
grievance procedures will vary from system to system and claim to claim, but it is the
prison's requirements, and not the PLRA, that define the boundaries of proper
exhaustion." *Jones*, 549 U.S. at 218.

The defense of  "failure to exhaust nonjudicial remedies should be raised in a
motion to dismiss, or be treated as such if raised in a motion for summary judgment."
*Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 368-69 (9th

**MEMORANDUM DECISION AND ORDER - 5**

Cir. 1988). A defendant may raise the exhaustion defense early in the case, on an incomplete record, via an unenumerated Rule 12(b) motion "as a matter of abatement." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003); *Payne v. Peninsula School Dist.*, 653 F.3d 863, 881 (9th Cir. 2011) (discussing unenumerated Rule 12(b) motions in the context of the IDEA).

To resolve a Rule 12(b) motion raising failure-to-exhaust issues, "the court may look beyond the pleadings and decide disputed issues of fact." *Wyatt*, 316 F.3d at 1119-20 In such instances, the court "has a broad discretion as to the method to be used in resolving the factual dispute." *Ritza*, 837 F.2d at 369. However, the court "must assure that [the petitioner] has [had] fair notice of his opportunity to develop the record." *Wyatt*, 315 F.3d at 1120 n.14.

Distinguishing unenumerated 12(b) motions from motions specifically brought under Rules 12(b)(6) and 56, the *Ritza* Court further explained that "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of [the] claims." *Ritza*, 837 F.2d at 369 (internal citations and punctuation omitted). Even so, because failure to exhaust is an affirmative defense, a defendant bears the burden of persuasion. *Wyatt*, 315 F.3d at 1119.

## 2.    IDOC Grievance Procedure

The Idaho Department of Correction uses a three-step administrative grievance process to address prisoner complaints relating to their incarceration, including those

**MEMORANDUM DECISION AND ORDER - 6**

issues which Plaintiff raises in this action. (Affidavit of Jill Whittington, Dkt. 20-2, pp.1-2).[2] The prisoner must first submit an offender concern form, then a grievance form, and then file an appeal of the response to the grievance. (*Id.* p. 3.)

The prisoner begins this process by routing the offender concern form to the staff member most capable of responding to, and if appropriate, resolving the problem. (*Id.* p.3.) The staff member should respond within 7 days of receiving the concern form. (*Id.*) If the issue is not resolved at this informal level, then the prisoner may complete a grievance form and must file that grievance within 30 days of the incident or problem. (*Id.*) The grievance form must contain specific information regarding the nature of the complaint, including the dates, places, names, and the offender must suggest a solution to the issue. (*Id.*) Upon receipt of a grievance, the Grievance Coordinator enters the grievance information into the Corrections Integrated System (CIS), an electronic database used to log grievances and appeals. (*Id.*) The Grievance Coordinator determines if the grievance form is completed correctly and if so, assigns it to the appropriate staff member, who must respond within 10 days. (*Id.* pp. 3-4.) If the form is completed incorrectly, the Grievance Coordinator returns it to the prisoner using the Grievance/Disciplinary Offense Report (DOR) Transmittal Form. (*Id.*)

After the staff member responds to the grievance, the Grievance Coordinator logs the information into the CIS database and then forwards the grievance to a "reviewing

---

[2]Jill Whittington is the Grievance Coordinator at ISCI. (Whittington Aff., Dkt. 20-2, at 2.)

**MEMORANDUM DECISION AND ORDER - 7**

authority," who is usually the deputy warden.  (*Id.* p. 4.)  The "reviewing authority" has 14 days to review the prisoner's complaint and the staff member's response and issue a decision denying, modifying or granting the prisoner's suggested solution.  (*Id.*)  The Grievance Coordinator logs the reviewing authority's response in the CIS database and forwards the printed grievance and the prisoner's original attachments to the prisoner, and then files a copy of the printed grievance, the original Grievance/Appeal Form and copies of all attachments.  (*Id.*)

If the prisoner is dissatisfied with the response to his grievance, he may then appeal within 5 days to the "appellate authority," and at ISCI the appellate authority is the Warden.  (*Id.*)  Once the appellate authority has issued its decision within 14 days of receipt of the appeal, the Grievance Coordinator logs the response in the CIS database, forwards the grievance and original attachments to the prisoner, and files a copy of the printed grievance, the original Grievance/appeal form, and copies of all attachments.  (*Id.* p. 5.)  Upon completion of all three steps, the offender grievance process is exhausted.  (*Id.*)

### 3.    Discussion

To meet their initial burden, Defendants rely upon the Whittington Affidavit filed in support of their supplement and motion.  (Dkt. 31-1.)  Whittington states that between June 2, 2008 and June 2, 2010, the Plaintiff submitted seven (7) institutional grievances.  (Dkt. 31-1, p. 2.)  These grievances included the following:

**MEMORANDUM DECISION AND ORDER - 8**

(1)     On May 15, 2009, Plaintiff alleged he was improperly removed from his pain medication, which was denied (Dkt. 31-1, Exh. A);

(2)     On May 26, 2009, Plaintiff alleged again that he was improperly removed from his prescribed treatment, which was denied (*Id*.);

(3)     On June 15, 2009, a grievance was filed, but it was not processed because it was the same issue as filed on May 26, 2009 (*Id*.);

(4)     On October 30, 2009, Plaintiff alleged that the Life Transition program was shut down by Defendant Fisher for retaliatory reasons, which was denied (*Id*.);

(5)     On October 30, 2009, another grievance was filed, but it was not processed because it was a duplicate of the Life Transition issue (*Id*.);

(6)     On January 12, 2010, Plaintiff requested the names of the three members of the Board of Corrections, which were provided to Plaintiff (*Id*.); and

(7)     On April 21, 2010, Plaintiff requested he be moved back to a single cell from which he alleged he was removed in retaliation for litigating against IDOC, but the grievance form was returned to Plaintiff for being untimely because it was filed more than 30 days after Plaintiff was relocated from his single cell (*Id*.).

Of the seven grievances submitted by Plaintiff between June 2, 2008 and June 2, 2010, Defendants argue two were not processed because they were duplicates, one was not processed because it was untimely, two concerned complaints about healthcare unrelated to the issues in this case and one was granted.  (Dkt. 30, pp. 6-7.)  As for the grievance concerning the termination of  "Life Transitions," it had no basis in fact as the program remained viable.  (*Id*., pp. 7-8.)  And although Plaintiff attempted to grieve his removal from a single cell, he waited too long to do so and therefore failed to properly exhaust his remedies regarding that claim. (*Id*.)  Thus, Defendants assert Plaintiff filed no

**MEMORANDUM DECISION AND ORDER - 9**

grievances for his current claims in his Compliant.

While Plaintiff did not file supplemental briefing nor respond to Defendants supplemental arguments, Plaintiff responded to Defendants' initial motion for partial summary judgment.  (Dkt. 23.)  Plaintiff argues that "[i]n addition to the three step process defined by Defendants, prisoners can also exhaust their administrative remedies by either: "(1) speaking to prison administrators and receiving a remedy to his concern, (2) addressing staff misconduct issues with the warden, or (3) failure of staff response to his concern form."  (*Id*., p. 6.)  Plaintiff states that he spoke directly to three prison administrators, including Defendant Smith, and addressed letters to Defendant Reinke "requesting investigations into the unethical conduct of Defendants."  (*Id.*, p.7.)  He further indicates that staff members did not respond to a concern form he filed.  (*Id*., p. 6.)

Plaintiff further asserts that Defendants withheld concerns and grievances that "show [Plaintiff] exhausted administrative remedies."  (*Id.*, p.8.)  Plaintiff submitted the following:

(1)     Three concern forms dated January 30, 2010, March 31, 2010, and April 20, 2010 regarding his removal from a single cell (Dkt. 23-3, pp.20-21);

(2)     A concern form dated October 19, 2009 regarding Defendant Wamble-Fisher's alleged termination of the Life Transitions Program and terminating Plaintiff's position in that program (Dkt. 23-3, p.23);

(3)     An eight-page concern form dated September 12, 2009 regarding Plaintiff's claims of his removal from a single cell, excessive cell searches, and his word processor and legal materials being taken by Defendant Sackett (Dkt. 23-3, pp.24-27);

(4)     A six-page concern form dated October 2, 2009 regarding an inmate's removal from the Life Transitions Program and Defendant Smith's alleged

**MEMORANDUM DECISION AND ORDER - 10**

termination of the entire Life Transitions Program (Dkt. 23-3, pp.28-30);

(5)   A concern form dated October 8, 2009 regarding Defendant Wamble-Fisher's retaliatory act of terminating Plaintiff from the Life Transitions Program (Dkt. 23-3, p.31);

(6)   A grievance form dated October 20, 2009 requesting an investigation into Defendant Wamble -Fisher's misconduct and for Plaintiff to be reinstated to the Life Transitions Program (Dkt. 23-3, p.31);

(7)   An IDOC grievance form (dated November 7, 2009) and appeal response (dated January 28, 2010) regarding Plaintiff's request that the Life Transitions Program be restarted (Dkt. 23-3, pp.32-33); and

(8)   A concern form dated April 8, 2008 regarding Plaintiff's removal from a single cell (Dkt. 23-3, p. 35.)

Finally, Plaintiff offers one alternative argument in lieu of exhausting his remedies - that Defendant Christensen "led [Plaintiff] to believe that any type of these [retaliatory] moves are not concernable due to litigation."  (Dkt. 23, p. 8.)

The Court concludes that Plaintiff  failed to exhaust his administrative remedies regarding all claims except one.  As set forth above, proper exhaustion requires that a prisoner "*complete* the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. at 88 (emphasis added).  While Plaintiff provides the Court with many concern forms, this is merely a beginning step in the IDOC grievance process. Where Plaintiff's concerns were denied or ignored he could have appealed those denials to the next level of review.  Thus, if Plaintiff was dissatisfied with how his concerns were handled he could have filed grievances, and if he was dissatisfied with the result of his

**MEMORANDUM DECISION AND ORDER - 11**

grievances he could have filed appeals.  Only when a claim completes the grievance process through the appellate stage is it ripe before this Court.

While Plaintiff argues that exhaustion can occur through speaking with staff or reporting directly to the warden, Plaintiff misreads the grievance  policy.  These are merely steps that are available to prisoners early on in the grievance process.  These steps alone do not satisfy the exhaustion requirement.  Prisoners are encouraged to discuss and resolve issues with staff before filing a concern form.  (Dkt. 23-3, p. 4.)  And prisoners may report confidential issues directly to the Warden by sealing a concern form or letter and placing it in the grievance lock box.  (*Id*., p. 5.)  Nevertheless, in order to exhaust an issue in either instance, a consent form, grievance form and appeal must all be filed.  (*Id*., p. 4.)

Furthermore, Plaintiff's allegations that he was prevented from pursuing his administrative remedies, or that concern forms and grievances were destroyed, are not supported by the record.

Plaintiff did, however, exhaust his administrative remedies as to one claim – that he was unlawfully terminated from the "Life Transitions" program.  On October 8, 2009, Plaintiff filed a concern form in which he complained that Defendant Wamble-Fisher removed him from the Life Transitions program based on retaliation.  (Dkt. 23-3, p. 31.) Dissatisfied with the response he received, Plaintiff properly filed a hand written grievance form on October 20, 2009.  (*Id*.)  On the grievance form, Plaintiff asserted Defendant Wamble-Fisher had not responded to his concerns and questions regarding

**MEMORANDUM DECISION AND ORDER - 12**

Plaintiff's reinstatement to Life Transitions.  (*Id*.)  Plaintiff further suggested that the solution to the problem was for him to be reinstated to Life Transitions.  (*Id*.)

On October 30, 2009, Plaintiff's grievance information was received and entered into the Corrections Integrated System (CIS).  An electronic version of the grievance was then created.  (*Id*., p. 32.)  The electronic grievance and the subsequent electronic appeal do not specifically note Plaintiff's termination complaint.  Nevertheless, this is irrelevant, given the overall circumstances.  While officials at ISCI may have chosen to ignore Plaintiff's complaint of termination, or summarized Plaintiff's complaints for the electronic grievance without noting the termination, these facts do not dictate whether or not Plaintiff exhausted his administrative remedies.

It is clear that the officials were aware of the termination claim and that Plaintiff exhausted the grievance process.  The actual handwritten concern form and grievance form prepared by Plaintiff makes it clear that he is complaining of being fired from Life Transitions.  (*Id*., p. 31.)  The subsequent electronic grievance and appeal state that Plaintiff wants his questions answered regarding the Life Transitions (*Id*., p. 32); this language is similar to that used by Plaintiff in his handwritten grievance form. Furthermore, the responses by officials indicate that they are familiar with Plaintiff's questions concerning the program.  Therefore, Plaintiff's claim that he was unlawfully terminated from the Life Transitions program remains.

**MEMORANDUM DECISION AND ORDER - 13**

## ORDER

**IT IS ORDERED** that Defendants' Motions for Partial Summary Judgment (Dkt. 20, 31) are GRANTED in part and DENIED in part. All claims in Plaintiff's Second Amended Complaint (Dkt. 3) are dismissed without prejudice, except the claim that Plaintiff was unlawfully terminated from the Life Transitions program.

**IT IS FURTHER ORDERED** that the following pre-trial schedule shall govern this case:

1.  **<u>Disclosure of Relevant Information and Documents</u>:** The parties are reminded of their continuing duty to disclose relevant documents and information as set forth in the Initial Review Order. This duty continues until the date of trial or the date the case is dismissed.

2.  **<u>Completion of Discovery and Requests for Subpoenas</u>:** All discovery shall be completed on or before **July 31, 2013**. Discovery requests must be made far enough in advance to allow *completion* of the discovery in accordance with the applicable federal rules *prior* to this discovery cut-off date. Discovery is exchanged between parties, not filed with the Court. The Court is not involved in discovery unless the parties are unable to work out their differences between themselves as to whether the discovery responses are appropriate. In addition, all requests for subpoenas duces tecum (pretrial production of documents by nonparties) must be made by **June 28, 2013**.

No requests for subpoenas duces tecum will be entertained after that date.
(Subpoena requests for trial appearances of witnesses shall not be filed until
the case is se for trial.) To obtain a subpoena duces tecum for production of
documents by nonparties, Plaintiff must first submit to the Court the names,
addresses, and the type of information sought from each person or entity to
be subpoenaed, and Plaintiff must explain the relevance of the items
requested to the claims. The Court will then determine whether the
subpoenas should issue.

3.   **Depositions**: Depositions, if any, shall be completed on or before **July 31,
2013**. If Defendants wish to take the deposition of Plaintiff or other
witnesses who are incarcerated, leave to do so is hereby granted. Any such
depositions shall be preceded by ten (10) days' written notice to all parties
and deponents. The parties and counsel shall be professional and courteous
to one another during the depositions. The court reporter, who is not a
representative of Defendants, will be present to record all of the words
spoken by Plaintiff (or other deponent), counsel, and any other persons at
the deposition. If Plaintiff (or another deponent) wishes to ensure that the
court reporter did not make mistakes in transcribing the deposition into a
written form, then Plaintiff can request the opportunity to read and sign the
deposition, noting any discrepancies between what is transcribed and what
Plaintiff believes was said. If Plaintiff wishes to take depositions, Plaintiff

**MEMORANDUM DECISION AND ORDER - 15**

must file a motion requesting permission to do so, specifically showing the ability to comply with the applicable Federal Rules of Civil Procedure by providing the names of the proposed persons to be deposed, the name and address of the court reporter who will take the deposition, the estimated cost for the court reporter's time and the recording, and the source of funds for payment of the cost.

4.   **Dispositive Motions:** All motions for summary judgment and other potentially dispositive motions shall be filed with accompanying briefs on or before **September 30, 2013**. Responsive briefs to such motions shall be filed within thirty (30) days after service of motions. Reply briefs, if any, shall be filed within fourteen (14) days after service of responses. All motions, responses, and replies shall conform to Rule 7.1 of the Local Rules for the District of Idaho**. Neither party shall file supplemental responses, replies, affidavits, or other filings not authorized by the Local Rules without prior leave of Court. No motion or memorandum, typed or handwritten, shall exceed 20 pages in length.**

5.    **Alternative Dispute Resolution (ADR)**. Should Plaintiff and any Defendant wish to attend a settlement conference, they should file a stipulation to attend settlement conference.

DATED:  **March 21, 2013**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 17**